The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on March 22, 2021, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: March 22, 2021



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | Case No. 20-11957 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| CUTTING EDGE DECORATIVE | ) | |
| CONCRETE, | ) | Adversary Proceeding |
|     Plaintiff. | ) | No. 20-1073 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | |
|     Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This case is currently before the Court on the motion for summary judgment of the debtor-defendant, John W. Struhar, Sr. ("the debtor"). The debtor contends that he is entitled to summary judgment in this nondischargeability action by

---

[1] This Opinion is not intended for official publication.

Cutting Edge Decorative Concrete ("Cutting Edge") under both 11 U.S.C. § 523(a)(4) (Count One) and § 523(a)(2)(A) (Count Two) because the debt owed to Cutting Edge was incurred by Bottomline Auctions Inc. ("Bottomline"), a corporation that was wholly owned by the debtor. The debtor argues that because Cutting Edge has not shown that the debtor was the alter ego of Bottomline, the debtor should not be personally liable for the debt of the separate corporate entity. For the reasons that follow, the debtor's motion for summary judgment is granted with respect to § 523(a)(4) (Count One) and denied with respect to § 523(a)(2)(A) (Count Two).

## JURISDICTION

This Court has jurisdiction over this action. Determinations of dischargeability under 11 U.S.C. § 523 are core proceedings under 28 U.S.C. § 157(b)(2)(I) and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

## BACKGROUND

Unless otherwise indicated, the facts described below are not in dispute. The debtor was the sole equity owner of Bottomline, which operated as an auction mediation company from 2009 until January 2020 (Docket No. 10). An auction mediation company is "a company that provides a forum through the internet for a

person to sell the person's real or personal property via the submission of silent bids using a computer or other electronic device." Ohio Rev. Code Ann. § 4707.01(G). On September 1, 2019, Bottomline entered into an agreement with Cutting Edge which stated that Bottomline would provide auction mediation services for equipment owned by Cutting Edge (Docket No. 10). The agreement was not signed by the debtor or any representative of Bottomline (Docket No. 10, Exh. A). According to the agreement, Cutting Edge was to receive 68 percent of the auction proceeds from Bottomline after the sale of the equipment, and Bottomline would receive a 32 percent commission (*Id.*). No funds were remitted to Cutting Edge following the sale (Docket No. 1, paragraph 11; Docket No. 4, paragraph 11). According to the debtor, following the sale, Bottomline had insufficient funds to pay Cutting Edge the money that was due under the agreement (Docket No. 10). According to Cutting Edge, instead of turning over the funds, the auction proceeds were used to pay the debtor's "salary" (Docket No. 12). Cutting Edge alleges that after the failure to remit the funds to Cutting Edge, the debtor represented that he would "personally" make sure Cutting Edge was paid the amount due under the agreement within two weeks in exchange for Cutting Edge refraining from taking any collection actions (Docket No. 1, paragraph 13; Docket No. 12), which the debtor denies (Docket No. 4, paragraph 13).

3

On April 13, 2020, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (Case No. 20-11957, Docket No. 1). On Schedule E, the debtor listed an unsecured debt held by "Cutting Edge Construction" in the amount of $5,084. The debtor checked the box to indicate that the debt was incurred by "debtor 1 only," and listed the debt as a nonpriority unsecured claim "business charge-off." The debtor did not check the boxes to indicate that the claim was contingent, unliquidated, or disputed.

On July 20, 2020, Cutting Edge filed this adversary proceeding claiming that the debt incurred by Bottomline, and by the debtor under the theory of alter ego or piercing the corporate veil, for failing to remit the auction proceeds should be nondischargeable under 11 U.S.C. § 523(a)(2)(A) and/or § 523(a)(4). In its complaint, Cutting Edge focuses on an alter ego or veil piercing theory of liability. Cutting Edge alleges that because the debtor was acting in a fiduciary capacity for Bottomline when failing to remit the auction funds to Cutting Edge, the debt is nondischargeable under §523(a)(4). Cutting Edge also alleges that, under an alter ego liability theory or by piercing the corporate veil, the debt is nondischargeable under § 523(a)(2)(A).

On January 21, 2021, the debtor filed a motion for summary judgment (Docket No. 10). In the motion, the debtor argues that the debt owed to Cutting

4

Edge was incurred by Bottomline and any allegedly wrongful actions were by Bottomline, not by the debtor personally. According to the debtor, Cutting Edge's mere statement that Bottomline was the alter ego of the debtor is not supported by any alleged facts. The debtor argues that there is no evidence and no allegations that the debtor should be held personally liable for the debts of Bottomline, a separate corporate entity.

On February 4, 2021, Cutting Edge filed a response to the debtor's motion for summary judgment (Docket No. 12). In its response, Cutting Edge argues that Bottomline was the debtor's wholly owned company, which collected the proceeds of the auction of Cutting Edge's equipment and paid the proceeds to the debtor as "salary" rather than remitting the funds to Cutting Edge pursuant to the agreement. Cutting Edge then claims that the debtor personally guaranteed to pay Cutting Edge the auction proceeds in exchange for Cutting Edge not taking any legal actions to collect on the debt. Cutting Edge claims that by personally guaranteeing to pay Cutting Edge, the debtor created a fiduciary relationship with Cutting Edge and then breached his fiduciary duty by failing to remit the auction funds.

On February 24, 2021, the debtor filed a reply to Cutting Edge's response (Docket No. 16). In the reply, the debtor again argues that there are no grounds for holding the debtor personally liable for Bottomline's debt.

5

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570.

## DISCUSSION

In his motion for summary judgment, rather than focusing on his own potential liability, the debtor's main argument is that no evidence has been

6

presented to make the debtor liable for the debt of Bottomline under a theory of alter ego or piercing the corporate veil. However, if the debtor himself is the one who committed the misrepresentation or fraudulent scheme, the debtor is also personally liable for his own tort, rather than being liable through a separate company under a theory of alter ego or piercing the corporate veil. Simply because someone is an agent of a separate corporate entity, that does not mean that if the agent commits a tort or other wrong the agent cannot be sued in the agent's personal capacity:

> Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment. . . . "Agents, like other persons, are bound to exercise ordinary care in the performance of their duties. If an agent fails to exercise care, and negligently or intentionally causes injury to another, the fact of agency will not relieve him of liability, and this is so even though the principal may be liable also. This general principle is applicable to corporate officers and agents. So, if a corporate officer commits a tort while in the performance of his duties, not only the corporation but the officer also will be liable for the wrongful acts."

*Atram v. Star Tool & Die Corp.*, 64 Ohio App. 3d 388, 393, 581 N.E.2d 1110, 1113 (1989) (quoting 12 Ohio Jurisprudence 3d (1979) 127-28, Business Relationships, § 346); *see also Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 847 (6th Cir. 1999) ("In Ohio both a corporation and an officer are liable for wrongful acts committed by an officer in performance of his corporate duties."). In short, no evidence of alter ego or veil piercing is needed if the debtor

is personally liable to Cutting Edge under some other state law claim, such as common-law fraud or a personal guarantee.

Absent a stipulation as to the debtor's liability on an underlying state law claim and the amount of such claim, Cutting Edge will need to establish the elements of such a claim, in addition to the elements for the nondischargeability of such claim under 11 U.S.C. § 523(a)(4) or (a)(2)(A). For purposes of the debtor's motion for summary judgment, the evidence when construed in a light most favorable to Cutting Edge supports a claim that the debtor personally guaranteed $5,084 that Bottomline owed Cutting Edge.

## DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

Section 523 of the Bankruptcy Code provides, in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
>
> . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

The Sixth Circuit has defined defalcation to encompass "not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for such funds." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (citations omitted).

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.

*Id.* (citations omitted). "Fiduciary capacity," as applied in the defalcation provision of § 523, is construed more narrowly than the term is used in other contexts. The defalcation provision applies only to express or technical trusts, and "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 639-40 (citations omitted).

In addition, the Supreme Court recently addressed the state of mind requirement for defalcation under § 523(a)(4) of the Bankruptcy Code in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). In *Bullock*, the Supreme Court held that defalcation under § 523(a)(4) "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269.

20-01073-aih    Doc 17    FILED 03/22/21    ENTERED 03/22/21 15:00:18    Page 9 of 19

Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Bucci*, 493 F.3d at 644 (quoting *Brady*, 101 F.3d at 1173).

The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). Since a debtor is unlikely to admit to acting with bad motives, fraudulent intent may be shown through circumstantial evidence. *Id.* at 116. The court may be aided in its subjective analysis by the presence of traditional indicia of fraud—"e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004). The court should review the circumstances surrounding the case and determine "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent. *Rembert v. AT&T Universal Card Servs.*

10

*(In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). For embezzlement, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. *Fox*, 370 B.R. at 116. As a result, the creditors do not need to demonstrate justifiable reliance to prove "fraud in fact" under § 523(a)(4).

For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 n.3 (Bankr. N.D. Ohio 2003). The original taking of the property must have been unlawful. *See Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997).

In Count One of the complaint, Cutting Edge alleges that the debt is nondischargeable under § 523(a)(4). Although under § 523(a)(4) a debt is nondischargeable for embezzlement, larceny, or defalcation, Cutting Edge's complaint only alleges defalcation. Because the complaint does not allege that the debt is nondischargeable for embezzlement or larceny, the Court will not address those issues.

In its response to the motion for summary judgment, Cutting Edge refers to state law in claiming that the debtor acted in a fiduciary capacity (Docket No. 12).

11

Cutting Edge cites to *Groob v. KeyBank*, 2006-Ohio-1189, 108 Ohio St. 3d 348, 843 N.E.2d 1170, which states that a fiduciary is "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking." 108 Ohio St. 3d at 351 (internal citations omitted). However, an exception to discharge under § 523(a)(4) for defalcation "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . [T]he defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Bucci*, 493 F.3d at 639-40. Nothing in the complaint, response to motion for summary judgment, or in any of the relevant affidavits or documents alleges the elements of an express or technical trust with respect to the debtor. There is no genuine issue of material fact as to whether an express or technical trust was created between the debtor personally and Cutting Edge, and therefore the debtor's motion for summary judgment as to § 523(a)(4) is granted.

Whether the elements of an express or technical trust are alleged as to Bottomline is irrelevant; Bottomline is not a party to this action. Moreover, even if Cutting Edge had entered into the same arrangement personally with the debtor directly, such an arrangement would not meet the technical trust requirements for

12

20-01073-aih    Doc 17    FILED 03/22/21    ENTERED 03/22/21 15:00:18    Page 12 of 19

defalcation under § 523(a)(4). *See, e.g.*, *Aamodt v. Narcisi (In re Narcisi)*, 539 B.R. 385, 392 (Bankr. M.D. Fla. 2015) ("Bankruptcy courts have consistently held that an individual who serves as an auctioneer or consignee under a private contract does not act in a fiduciary capacity.") *aff'd,* 559 B.R. 233 (M.D. Fla. 2016), *aff'd,* 691 F. App'x 606 (11th Cir. 2017); *Freer v. Beetler (In re Beetler)*, 368 B.R. 720, 726 (Bankr. C.D. Ill. 2007) (no fiduciary relationship created under § 523(a)(4) from consignment sale of tractor); *Poe v. Marshall (In re Marshall)*, 24 B.R. 105, 107 (Bankr. W.D. Mo. 1982) ("[T]he relationship of auctioneer-seller contained none of the attributes of an express or technical trust. There was no fiduciary relationship between plaintiff and defendant when the property was sold.").

In this case, there is nothing in the one page "Auction Consignment Agreement" that created a technical trust meeting the requirements of § 523(a)(4). *See Narcisi*, 691 F. App'x at 611 ("[A] consignment agreement creating an agency relationship does not, by itself, establish a fiduciary relationship for purposes of § 523(a)(4).") (citing *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005)). Nor is there anything under Ohio statutory provisions for auctioneers that creates a technical trust for auction mediation companies such as Bottomline. Rather, Chapter 4707 of the Ohio Revised Code

generally exempts auction mediation companies from the licensing and other regulatory requirements contained in that chapter. Ohio Rev. Code Ann. § 4707.02.

## DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

Section 523 provides in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
 . . . .
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

To except a debt from discharge for false representation under § 523(a)(2)(A), a creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert*, 141 F.3d at 280-81. The creditor must demonstrate justifiable reliance under this section and need not pass the higher standard of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995).

14

A debt may also be excepted for discharge under § 523(a)(2)(A) for "actual fraud." In *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016), the Supreme Court held that the term "actual fraud" in § 523(a)(2)(A) includes fraudulent schemes even when those schemes do not involve a false representation, such as a fraudulent conveyance of property made to evade payment to creditors. For example, if the debtor's use of Bottomline were all part of an elaborate fraud to sell the equipment of entities such as Cutting Edge with no intention of turning over the proceeds, that would establish nondischargeability for "actual fraud" under § 523(a)(2)(A).

Section 523(a)(2)(A) expressly excludes all statements respecting a debtor's financial condition, whether written or oral, as a basis for nondischargeability. *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, at *5 (B.A.P. 6th Cir. 2007). Instead, statements respecting a debtor's financial condition fall under § 523(a)(2)(B). A debt based upon an oral misrepresentation of financial condition is not actionable and will be dischargeable. *Id*. The United States Supreme Court has recently held that the term "statement . . . respecting the debtor's . . . financial condition" should be interpreted very broadly, encompassing even a statement about a single asset. *Archer, Lamar & Cofrin v. Appling*, 138 S.Ct. 1752, 1764 (2018). Justice Sotomayor explained that creditors still

15

benefit from the protection of § 523(a)(2)(B) so long as they insist that the representations respecting the debtor's financial condition on which they rely in extending money, property, services, or credit are made in writing. *Id.* Doing so will likely redound to their benefit, as such writings can foster accuracy at the outset of a transaction, reduce the incidence of fraud, and facilitate the more predictable, fair, and efficient resolution of any subsequent dispute. *Id*.

In Count Two of the complaint, Cutting Edge alleges that the debt is nondischargeable under § 523(a)(2)(A). To make a determination of nondischargeability for false representation under § 523(a)(2)(A), Cutting Edge must first show that the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth. *Rembert*, 141 F.3d at 280-81. A creditor's promise to forebear from collection of a debt constitutes an "extension of credit" under § 523(a). *See Wolf v. Campbell (In re Campbell)*, 159 F.3d 963, 966 (6th Cir. 1998).

According to Cutting Edge, after Bottomline failed to remit the funds, the debtor personally promised to make sure Cutting Edge was paid the amount due under the agreement in exchange for Cutting Edge refraining from taking any collection actions (Docket No. 1, paragraph 13; Docket No. 12). Cutting Edge

16

claims that the debtor himself created a fiduciary relationship with Cutting Edge by promising to personally repay the auction proceeds owed to Cutting Edge (Docket No. 12, pg. 4). In the complaint, Cutting Edge claims the debtor "knew, or ought to have known, that [the debtor] would not remit, nor permit Bottomline Auctions Inc. to remit, the auction funds to Plaintiff Cutting Edge" (Docket No. 1, paragraph 9). Viewing the evidence in the light most favorable to Cutting Edge, a genuine issue of material fact exists as to whether the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth.

Second, Cutting Edge must show that the debtor intended to deceive Cutting Edge. As discussed above, Cutting Edge claims that the debtor represented that he would personally pay Cutting Edge the money it was owed under the agreement even though he knew that statement was false. Viewing the evidence in the light most favorable to Cutting Edge, a genuine issue of material fact exists as to whether the debtor intended to deceive Cutting Edge.

Third, Cutting Edge must show that it justifiably relied on the debtor's false representation. In an affidavit, the president of Cutting Edge states that he relied upon the debtor's promise to personally pay Cutting Edge the funds due under the agreement and "believed that [he] was not dealing with Bottom[l]ine, but with

17

John Struhar himself" (Docket No. 12, pg. 7).  Cutting Edge also claims that "there is no dispute that Cutting Edge relied upon [the debtor's] promise [to personally pay Cutting Edge] to refrain from taking action [to collect the debt]" (Docket No. 12, pg. 4).  Therefore, viewing the evidence in the light most favorable to Cutting Edge, a genuine issue of material fact exists as to whether Cutting Edge justifiably relied on the debtor's false representation.

Finally, Cutting Edge must show that its reliance on the debtor's false representation was the proximate cause of Cutting Edge's loss.  Cutting Edge claims it relied on the debtor's promise to personally pay Cutting Edge the funds in exchange for refraining from taking action to collect on the debt (Docket No. 12, pg. 4).  Therefore, viewing the evidence in the light most favorable to Cutting Edge, a genuine issue of material fact exists as to whether Cutting Edge's reliance on the debtor's false representation was the proximate cause of Cutting Edge's loss.  Accordingly, the debtor's motion for summary judgment as to Count Two of the complaint is denied.

## CONCLUSION

For the reasons stated above, the debtor's motion for summary judgment is granted as to Count One of the complaint and denied as to Count Two of the

18

complaint. Count Two will be the subject of a trial on April 23, 2021, and all trial-related deadlines remain in effect.

    IT IS SO ORDERED.